[L. A. No. 2190.  Department Two.—December 31, 1908.]

## HUNKINS-WILLIS LIME AND CEMENT COMPANY (a Corporation), Respondent, v. LOS ANGELES WAREHOUSE COMPANY (a Corporation), Appellant.

SALE—CONTRACT BASED ON LETTERS AND TELEGRAMS—PROPOSAL AND ACCEPTANCE.—To constitute a binding contract of sale made in the form of letters and telegrams which passed between the prospective seller and purchaser, there must be a proposal squarely assented to. If the acceptance be not unqualified, or go not to the actual thing proposed, then there is no binding contract. A proposal to accept, or an acceptance based upon terms varying from those offered, is

a rejection of the offer. It is held in the present case, upon a review of the letters and telegrams which passed between the parties, that they did not constitute a proposal squarely assented to.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

E. W. Freeman, and A. D. Laughlin, for Appellant.

D. P. Hatch, for Respondent.

MELVIN, J.—Action for breach of contract. Judgment was for plaintiff. Defendant appeals from the judgment and order denying a new trial. The alleged contract was evidenced by certain telegrams and letters between Mr. Charles F. Whittlesey, who was appellant's agent, and the respondent. So much of the correspondence as is pertinent is as follows:—

"Los Angeles, Calif. May 9th, 1906.
Hunkins-Willis Lime and Cement Co.,
        "St. Louis.
"Will you take order for seven thousand barrels cement Los Angeles delivery same terms as for Wentworth. Pasadena.                    "Charles F. Whittlesey."

"May 10th, 1906.
"Chas. F. Whittlesey,
        "Los Angeles, Cal.
"Will accept your order basis our to-day's wire to General Wentworth provided order received in time enabling us wire order mills to-day. Mill prices advance to-morrow. You unknown. Wire reference or security. Rush answer.
                    "Hunkins-Willis L. & C. Co."

"May 11th, 1906.
"Chas. F. Whittlesey,
        "Los Angeles, Cal.
"Our investigation your responsibility satisfactory. Have arranged with mills extending time acceptance to to-day. Wire order.                    "Hunkins-Willis L. & C. Co."

"LOS Angeles, Calif. 11.
"HUNKINS-WILLIS L. & C. Co.,
     "St. Louis, Mo.
"Your wire eleventh place order for seven thousand barrels particulars by letter to-day.
"CHARLES F. WHITTLESEY."

On May 11th a letter was sent by respondent to Mr. Charles F. Whittlesey, of which the following is in part a copy:

May 11th, 1906.
"MR. CHAS. F. WHITTLESEY, Architect,
     "Los Angeles, Cal.
"Dear Sir: Referring to wires exchanged and inclosing herewith confirmation of our wires to you.

"In explanation of our first wire would state that in our proposition to Gen. Wentworth there was a stenographic error which, however, does not affect the results, but we thought it best to have the matter clearly understood, hence wired Gen. Wentworth and are to-day in receipt of his answer, which is satisfactory.

"We will furnish you from one car up to 20,000 bbls., subject to prior sale, of Atlas Portland cement delivered in carload lots on track at your city at $3.85 per bbl. in cloth bags, which price includes the charge for the bags. Four bags or 380 lbs. equal a barrel. On return of the bags to the mills a cridit of 7½ cts. each is allowed thus making the net price of the cement $3.55 per barrel, not considering the freight to be paid for the return of the empty bags, a trivial sum. . . .

"Our proposition is good for any quantity you require as above stated, shipments to be made as desired by you prior to Oct. 1st, in as nearly equal monthly quantities as possible. Since wiring you early this A. M. we have arranged with our mills so as to extend time of acceptance up to and including the 15th. Referring to our first wires as to reference. You were entirely unknown to us, but investigation since has resulted satisfactorily and would feel honored to open business relations with your good self. Earnestly hoping to have the pleasure of serving you, we are,
     "Yours truly,
          "HUNKINS-WILLIS L. & C. Co.

"P. S. Terms and other conditions as per reverse side of first sheet of this letter."

It is not necessary to quote the conditions mentioned, as they are the same as those appearing in the letter to General Wentworth to which reference was made. The letter to General Wentworth, dated May 3, 1906, contained practically the same terms as those appearing in the letter of May 12th just quoted above, with the exception of a statement that the net price of the cement would be about $3.46 per barrel. This was obviously a mistake in calculation, and on May 10th had been corrected by the Hunkins-Willis Company by a telegram to General Wentworth as follows:—

"Our proposition third three 'eighty-five including sacks, thirty cents barrel rebate when sacks returned mills. Net three fifty-five instead of three forty-six. Latter stenographic error."

On May 12, 1906, respondent sent the following letter to Mr. Whittlesey:

"MR. CHAS. F. WHITTLESEY,

"Los Angeles, Calif.

"Dear Sir: We received last P. M. wire reading: 'Your wire 11th. Place order for 7,000 bbls. Particulars by letter to-day.' In explanation we have booked your order for 7,000 bbls. of Atlas Portland cement. Price, terms and conditions *as per our letter of the 11th.* We are very glad indeed to have the pleasure of serving you and you can rest assured that preferred attention will be given to your orders. We now await your shipping instructions.

"Respt.

"HUNKINS-WILLIS L. & C. CO."

A telegram to the same effect was sent on the same day. Mr. Whittlesey was also informed by wire on May 17th that the letter mentioned in his telegram of the 11th had not been received. On May 19th Mr. Whittlesey wired the respondent as follows:

"LOS ANGELES, Calif. May 19.

"HUNKINS-WILLIS LIME AND CEMENT CO.

"St. Louis, Mo.

"Your letter received. Understood your price Wentworth three forty six. Can buy here less than three fifty. Cancel order for seven thousand.

"CHAS. F. WHITTLESEY."

The respondent corporation refused to cancel the order, and shipped 1080 barrels of cement to Los Angeles. This shipment was declined and no more cement was sent. Judgment was given for the loss caused by demurrage and cost of resale of this shipment and as to the remaining 5920 barrels in accordance with the provision of section 3311 of the Civil Code. Appellant contends that there was no meeting of the minds of the alleged contracting parties, while respondent's position is that Mr. Whittlesey's telegram of the 11th: "Your wire eleventh place order for seven thousand barrels particulars by letter to-day," and the respondent's letter of the same day, together with its telegram of the day following: "Wire received. Order booked. We await letter particulars," constitute the closing acts in the contract. We find ourselves unable to agree with this view. Ignoring the final sentence of Mr. Whittlesey's telegram "particulars by letter to-day," there is abundant evidence in respondent's own telegram and letter that the contract was not considered complete. The former communication advised Mr. Whittlesey that the order was booked—not accepted—and referred to the expected letter of particulars, while the latter contains this very significant language: "Referring to our first wires as to reference. You were entirely unknown to us, but investigation since has resulted satisfactorily and we would feel honored to open business relations with your good self. Earnestly hoping to have the pleasure of serving you, we are," etc. There was not that meeting of the minds of the parties which must take place before a contract is complete. Upon this subject, in the case of *Four Oil Co.* v. *United Oil Producers,* 145 Cal. 624, [79 Pac. 366], Mr. Justice Henshaw used the following language: "The rules for determining whether or not a proposal and acceptance constitute a binding contract are well settled, and by this court have been expressed in the following language: 'To constitute a binding contract made in this form (letters), there must be a proposal squarely assented to. If the acceptance be not unqualified, or go not to the actual thing proposed, then there is no binding contract. (1 Wharton on Contracts, sec. 4.) A proposal to accept, or an acceptance based upon terms varying from those offered, is a rejection of the offer. (*National Bank* v. *Hall,* 101 U. S. 43, 51.) An offer imposes no obligation unless it is accepted

upon the terms upon which it was made. (*Tilley* v. *County of Cook,* 103 U. S. 161.) An acceptance must be absolute and unqualified. A qualified acceptance is a new proposal. (Civ. Code, sec. 1585.)' (*Wristen* v. *Bowles,* 82 Cal. 84 [82 Pac. 1136].)" That there was not here a "proposal squarely assented to" seems too obvious to require further argument.

It follows that the judgment should be reversed, and it is so ordered.

Henshaw, J., and Lorigan, J., concurred.