[Civ. No. 6286. Third Appellate District.—June 18, 1940.]

GERALDINE McLEAN, Respondent, v. ERNEST W. ELLIS, Appellant.

Proctor K. Perkins and John L. Larue for Appellant.

Ivan C. Sperbeck for Respondent.

PULLEN, P. J.—This action was brought for the recovery of $5,000, less a credit of $1200, which was alleged to have been loaned to appellant and others, by the assignor of respondent.

Appellant claims that respondent's assignor, Mrs. Jessie Moore, had entered into a joint mining venture with himself and the other named defendants, and that the right to be repaid was controlled by a conditional agreement which had been executed and received by Mrs. Moore.

The court found that Mrs. Moore had loaned the $5,000 to defendants at their request and that she was not bound by the written agreement sent to her by the appellant, Mr. Ellis. The court concluded that she had not entered into any joint mining venture, and judgment was rendered in favor of respondent and against appellant for $3,800, the amount of the balance remaining unpaid.

Mrs. Moore, a resident of the State of Texas, first met Mr. Ellis in Los Angeles in September, 1934. This meeting was

a result of correspondence between Mrs. Moore and her nephew, Mr. Sears, who was interested in a mining venture at Grass Valley with Mr. Ellis and other associates.

It had been previously determined that $5,000 was needed to carry on the mining venture, and Sears told Ellis that the money might possibly be obtained from his aunt, Mrs. Moore. Sears testified that Ellis explained the mining venture to Mrs. Moore at the meeting in Los Angeles, and that Mrs. Moore told Ellis she was not interested. Mrs. Moore testified that at that time Ellis asked her for a loan of $5,000, but she refused. Ellis returned from Los Angeles without any assurance that the money might be obtained. Further correspondence was carried on between Sears and his aunt, and in the latter part of October, 1934, Mrs. Moore sent a check for $5,000 to Mr. Sears. At this time Mrs. Moore had not received any note or any other evidence of indebtedness from Mr. Ellis or any of the defendants. Mrs. Moore testified that the check for $5,000 was sent to her nephew after having received a letter from him which assured her that it would only be a ''short time'' loan, and that the money had been sent to him on this assurance.

The $5,000 check was retained by Mr. Sears for some time, and then after a talk with Mr. Ellis, it was turned over to him on November 12, 1934. A discussion took place between Ellis and Sears as to ''an agreement'' or ''legal note'' which was to be sent to Mrs. Moore. On November 13, 1934, Ellis wrote a letter to Mrs. Moore in which it was stated that a loan was sought from the government and that the $5,000 would be paid back as soon as the loan went through. The letter stated that a bonus of $1,000 would be paid after they had received their money. The letter also referred to $2,500 bonus, and then spoke of a $5,000 bonus in the event that the government loan failed to go through. Mrs. Moore testified that prior to this letter there had been no discussion of any bonus or government loan and that she had no knowledge of any such arrangement prior to the receiving of this letter from Mr. Ellis. The check for the $5,000 cleared the bank on November 14, 1934.

Mr. Sears testified that his aunt wrote to him during the latter part of December, 1934, and requested that she be sent a ''legal note''. Sears spoke to Ellis in this regard and was assured that a note would be drawn up and sent to Mrs.

Moore. No note was ever drawn up in favor of Mrs. Moore, but an agreement, which was admitted in evidence as plaintiff's exhibit No. "1", was prepared by Mr. Ellis and signed by himself and the other defendants. This agreement was dated January 18, 1935, enclosed in a letter written by Ellis of the same date, and sent to Mrs. Moore, where it was received by her at her home in Texas. Mrs. Moore did not make any reply to Ellis upon receipt of this agreement, nor write any letter of protest to Ellis. The agreement was retained in her possession up until the time of trial. Mrs. Moore testified, however, that she did write a letter of protest to Mr. Sears very soon after receiving the letter and agreement of January 18, 1935. Upon cross-examination Mrs. Moore testified that she may have written to Sears in regard to this letter and stated that the letter "was good news", but she also testified that she didn't like the agreement and would not accept it.

This agreement of January 18, 1935, was not an unconditional promise to repay the $5,000, but payment was conditioned upon the receiving of the government loan. The agreement also provided for a bonus of $2,500 to be paid from the operation of the venture. It was also provided that a bonus of $5,000 would be paid from the operation of the mining lease if the government loan failed to go through. The agreement did not purport to hold any of the defendants personally liable for repayment of the $5,000.

The government loan which was relied upon to carry out the mining venture was never granted, and financial difficulties which arose brought the mining venture to an end in November, 1935. Certain equipment which had been used in connection with the mine was subsequently sold for $1200, and the proceeds were turned over to Mrs. Moore.

Mrs. Moore demanded payment of the $3,800 alleged to be due, and upon a refusal by the defendants to pay, she assigned all of her right, title and interest in said alleged loan to the respondent, Geraldine McLean. Suit was commenced on September 29, 1936, and the defendant J. R. Sears, filed a confession of judgment on the day the case was called to trial.

█ The trial court having found that Mrs. Moore was not a party to the mining venture, but that she made a loan of $5,000 to the defendants, and further finding that she had

never entered into the written agreement executed by the defendants, the sole question is one of sufficiency of the evidence to support those findings.

We are of the opinion that the findings are supported by sufficient evidence.

The question of acceptance of the agreement of January 18, 1935, is directly affected by the intent of the parties at the time of entering into the original transaction. If the parties intended that the $5,000 constitute a loan, then the written agreement prepared by Ellis and sent to Mrs. Moore was in effect an offer to enter into a new contract, and would not be binding upon her unless the evidence showed that she had accepted such offer. Mrs. Moore and Mr. Sears both testified that it had been understood that the transaction was to be a "short time loan". There is no evidence in the record that indicates that Mrs. Moore believed she was entering into the mining venture. The appellant, Mr. Ellis, does not testify that it was intended that Mrs. Moore was to become a party to the mining venture. In fact, the letter of January 30, 1936, written to Mrs. Moore by Ellis after the mining venture had come to an end, indicates that Ellis was under the belief that a straight loan had been made by Mrs. Moore. Mr. Ellis speaks about "paying off the loan" and "cutting down the amount remaining to be paid".

A loan of the money having been intended by the parties, the written agreement prepared by Ellis constituted an offer to enter into a new contract, and this offer never having been accepted by Mrs. Moore, she cannot be held to be bound by the written agreement. The written agreement evidenced a conditional right to recovery of the $5,000, and in order for it to be binding upon Mrs. Moore it would have been necessary to show an unqualified acceptance. The evidence fails in such respect. The fact that Mrs. Moore received this written agreement and retained it in her possession does not constitute an acceptance of the offer so as to bind her by the agreement. (6 Cal. Jur., p. 53, sec. 30; *Hunkins-Willis Co.* v. *Los Angeles, etc.*, 155 Cal. 41 [99 Pac. 369].)

The case of *Fidelity etc. Co.* v. *Fresno Flume etc. Co.*, 161 Cal. 466 [119 Pac. 646, 37 L. R. A. (N. S.) 322], cited by appellant is clearly distinguishable from the instant case. That case involved the acceptance of an insurance policy. The court held that the insured could not vary the terms of

the written policy which had been accepted by parol evidence. In the present case the evidence indicates that a loan of money was intended, and the written agreement, if accepted, would have constituted an entirely new and different type of agreement. There is no attempt in the present suit to vary the terms of the agreement prepared by Ellis, as the action had not been brought upon this instrument.

Mrs. Moore testified that although she retained the written agreement sent by Ellis, she immediately sent a letter of protest to Mr. Sears, and asked for something ''more legal''. Mr. Sears corroborates this testimony. Although Mrs. Moore might have written a letter of protest to Mr. Ellis or may have returned the written agreement, the written protest to Mr. Sears was sufficient. Mr. Sears was one of the defendants and his signature appeared upon the agreement prepared by Ellis. Moreover, Sears had been one of the moving parties in procuring the money. Mrs. Moore had every reason to believe that a letter of protest to Mr. Sears would be sufficient notification of her dissatisfaction with the written agreement. There is no evidence that Sears had been given any authority to bind Mrs. Moore by an agreement such as the one prepared and sent to her. The evidence supports the findings that the money was procured as a loan, and that Mrs. Moore never became bound by the written agreement prepared and sent to her by Mr. Ellis. The record discloses ample evidence to support the finding that the transaction was a loan to defendants.

The judgment is affirmed.

Thompson, J., and Tuttle, J., concurred.