[Civ. No. 17964. Second Dist., Div. One. July 12, 1951.]

RUTH LIPTON, Respondent, v. HARRY G. JOHANSEN et al., Appellants.

George I. Devor, Norman Newmark, Maurice Thorner and Richard L. Weiss for Appellants.

Gold & Needleman, J. Geo. Gold, and Ruth Bernfeld for Respondent.

DRAPEAU, J.—Plaintiff, a licensed real estate broker, seeks to recover a commission.

Her second amended complaint alleges that on August 24, 1948, she procured a buyer able, ready and willing to pur-

chase defendants' real property located in Bel Air, Los Angeles. That the purchase price agreed upon between defendants and the buyer was $165,000, and that defendants by an instrument in writing agreed to pay plaintiff a commission of $8,250 for her services as such real estate broker.

Defendants' answer affirmatively alleges the execution of a deposit receipt on August 24, 1948, by the terms of which they agreed to sell their property to one Donald F. Duncan. It is further alleged that an escrow was entered into on the same day; that the deposit receipt and the escrow instructions "together set forth the full terms and conditions of the entire real estate transaction"; and that the payment of the broker's commission of $8,250 was predicated upon a condition precedent, i. e., the close of the escrow, which condition was never met.

From a judgment in favor of plaintiff, defendants appeal.

The findings of the trial court may be summarized as follows:

1. That the deposit receipt standing alone and signed by the purchaser, the appellants and respondent was a valid, binding contract between all the parties thereto;

2. That respondent was not bound by the terms of the escrow instructions;

3. That the escrow instructions did not make the close of escrow a condition precedent to respondent's right to recover commissions;

4. That respondent procured a purchaser ready, willing and able to purchase upon the terms and conditions fixed by appellants;

5. That respondent was entitled to a commission of $8,250 for her services.

It is here contended that such findings are contrary to law and are not supported by the evidence.

The record herein discloses that immediately prior to August 24, 1948, appellants and respondent had numerous discussions regarding the sale of appellants' Bel Air property to Mr. Donald F. Duncan, who had been introduced to appellants by respondent. At this time appellants verbally agreed to pay respondent a 5 per cent commission on the sale. In accordance with detailed instructions regarding the terms of sale which had been given to her by Mr. Johansen, respondent prepared several copies of a deposit receipt.

On the morning of August 24th, the parties met at appellants' home. An inventory of the furnishings was checked

room by room and approved by Mr. Duncan, whereupon the deposit receipt was executed by all parties. Pursuant thereto, the buyer agreed to purchase and appellants agreed to sell "the above described property on the terms and conditions herein stated." Appellants also agreed "to pay the above signed agent as commission the sum of $8,250.00, or one-half of the deposit should same be forfeited." The deposit on the sale was $5,000.

The parties then proceeded to the escrow department of a leading bank, where respondent handed the executed deposit receipt to the escrow clerk and told the latter to draw escrow instructions conforming to such document. Respondent then joined Mrs. Johansen at the back of the escrow booth and did not participate in the discussions of Mr. Johansen, Mr. Duncan and the latter's attorney during which time changes were made in the terms of the sale. Respondent testified that she did not know that the provisions of the escrow instructions differed from the deposit receipt until some time later. She did not sign the instructions; they were not shown to her and she was not consulted with respect thereto.

Among these provisions was one to the following effect: "Pay at close of escrow any encumbrances necessary to place this title in the condition called for and the following: Pay commission of $8,250.00 to Ruth Lipton Realty Co. . . ."

Mr. Johansen testified that respondent took an active part in the discussion of each point raised at the escrow instruction conference. He also testified that he and his wife and Mr. Duncan signed the deposit receipt in the escrow office while the escrow instructions were being typed; that respondent stated: "This is a deposit receipt which it is necessary for you and Mrs. Johansen to sign, as it becomes part of the escrow, and is brought into escrow." In reply to the question: "Did you at any time ask Mrs. Lipton whether she would agree to be paid her commission only if the escrow closed?" Mr. Johansen stated: "I did not. Q. Did she volunteer or state at any time that it would be a condition acceptable to her? A. She did not. That subject never came up."

On rebuttal, respondent Lipton testified as follows:

"Q. By Miss Bernfeld: Mrs. Lipton, was it at anytime your intention in this transaction that the payment of your commission should be dependent upon the consummation of the transaction or the closing of the escrow? A. Never. I had earned my commission when I brought the buyer and seller

together, and we had a deposit receipt signed. My work was finished then."

. It was stipulated that appellants complied with all the conditions of the escrow instructions but that the buyer defaulted; that appellants had filed an action for damages for breach of contract against the purchaser; and that the property had been sold to a third party.

Appellants argue that the deposit receipt did not constitute a valid, binding contract between the parties because its terms "are too indefinite, too uncertain, too unintelligible to be enforced as a contract at law or in equity."

They assert that it is impossible to determine from the terms of the document either the price to be paid for the property or the manner of payment; nor what or how much furniture is included in the sale.

■ The deposit receipt acknowledges receipt from the buyer of a $5,000 deposit; describes the property adequately but not with particularity; states the property is to be furnished as per approved inventory to be placed in escrow. The purchase price is stated to be $165,000. "The balance of the purchase price is to be paid on or before Sept. 14, 1948, as follows to-wit: $75,000 cash to be deposited in escrow; balance of $90,000 to be paid over a period of three years." Then follow the particular amounts payable over the three year period, plus interest at 5 per cent.

˙ The trial court resolved the apparent conflict in these terms by its finding that the allegations of paragraph three of the second amended complaint were true, to the effect that the purchase price was $165,000, and the terms of sale were as follows:

"Seventy-five Thousand ($75,000.00) Dollars in cash to be paid on or before September 14, 1948, and the balance of Ninety Thousand ($90,000.00) Dollars to be paid on or before three (3) years thereafter with interest at the rate of five (5%) per cent per annum"; followed by the particular amounts payable each year. .

■ A contract is not invalidated merely because, on its face, it is ambiguous or uncertain, but on the contrary, such uncertainties may be resolved by parol evidence or by interpretation by the court as to its meaning. *Meyers* v. *Nolan,* 18 Cal.App.2d 319, 322 [63 P.2d 1216].

■ It is apparent from the most casual examination of

the deposit receipt, that the trial court has arrived at a reasonable interpretation of its terms. See *Deeble* v. *Stearns*, 82 Cal.App.2d 296, 298 [186 P.2d 173].

With respect to appellants' point as to what or how much furniture is included in the sale under the provision that the "property is to be furnished as per approved inventory to be placed in escrow," respondent cites the case of *Keelan* v. *Belmont Co.*, 73 Cal.App.2d 6, 12 [165 P.2d 930]. In that case appellant urged that "when the clause requiring the approval of the buyer to the inventory and equipment was added to the deposit receipt, it became merely an offer and not a binding agreement." It was there held: "An examination of the document reveals that it is complete with respect to terms and conditions of the sale; and that it is signed by both parties, who agreed to buy and to sell upon the conditions therein expressed. The fact that it was made subject to the buyer's approval of the designated items, does not detract from its binding effect, especially in view of the court's finding that the buyer by his actions and conduct approved the inventory and equipment."

Likewise here, it was established that the buyer checked the furniture included in the inventory room for room on the morning of August 24, 1948 before the deposit receipt was executed, and that he placed his initials on the inventory signifying his approval that the specific items therein were included in the sale.

Appellants next urge that "the finding of the court to the effect that the deposit receipt was the full and final agreement between the parties thereto and that it was not contemplated that the final terms of their agreement should be set forth in escrow instructions, is not supported by the evidence and is contrary to law."

The evidence addressed to these questions was in direct conflict. The court in finding for respondent apparently disregarded appellants' testimony. It is not the province of this court to pass upon the credibility of witnesses. The finding objected to is substantially supported by the evidence hereinabove recited.

In the case of *LeBlond* v. *Wolfe*, 83 Cal.App.2d 282, 284, 287 [188 P.2d 278], it was held that the broker was not bound by a clause in the escrow instructions, added without his knowledge or consent, that the *commission was payable "if and when deal is closed."* The court there stated: "Plaintiff had performed before the opening of the escrow. His

right to the $2,500 had accrued. It makes no difference whether the 'deal' was closed or not.''

The established rules of law governing a broker's right to a commission are stated in *Meyer* v. *Selggio*, 80 Cal.App.2d 161, 164 [181 P.2d 690] : ''2. A broker's commission is earned when the vendee and vendor have executed a binding written agreement between them upon the terms provided in the contract of employment of the broker, and the vendee is ready, willing, and able to perform the contract on the terms prescribed. (*Lind* v. *Huene*, 205 Cal. 569, 570 et seq. [271 P. 1087].) 3. The readiness, willingness, and ability of the vendee are conclusively presumed in a suit by a broker to recover his commission upon proof that the vendor has entered into a valid contract of purchase and sale with the vendee. (*Malmstedt* v. *Stillwell*, 110 Cal.App. 393, 398 [294 P. 41].) 4. The right of the broker to his commission is not affected by failure of either party to carry out the agreement. (*Lind* v. *Huene*, *supra*; *Twogood* v. *Monnette*, 191 Cal. 103, 107 [215 P. 542].)''

In the instant case, the deposit receipt constituted the full and final agreement between appellants and respondent, and in the absence of either actual or implied consent to the terms thereof, respondent is not bound by the escrow instructions.

Appellants assert that *Edwards* v. *Billow*, 31 Cal.2d 350 [188 P.2d 748], stands for ''the proposition that any rights of respondent to a commission must be determined in light of the provisions of the escrow instructions. In other words, that to determine respondent's right to a commission the deposit receipt and the escrow instructions must both be considered.''

In the cited case there was evidence upon which the trial court based its finding that it was the intention of all parties that the terms of the sale including payment of commissions should be included in a further written agreement in the form of escrow instructions. And as stated in the opinion at page 358: ''Such evidence also supports the further implied finding that the 'Offer to Buy' did not constitute a complete or final contract. Under such circumstances this court will adhere to the interpretation placed by the trial court on the writings and the conduct of the parties.''

Here the evidence supports the finding that the parties did not contemplate that the final terms of their agreement should be set forth in escrow instructions.

Appellants argue that the finding ''that the promise of

appellants to pay a commission to respondent was not conditioned upon the closing of the escrow—an event which never occurred—is contrary to law." ▮ As heretofore stated, quoting from *Meyer* v. *Selggio*, 80 Cal.App.2d 161, 164 [181 P.2d 690]: "The right of a broker to his commission is not affected by failure of either party to carry out the agreement." See *Twogood* v. *Monnette*, 191 Cal. 103, 107 [215 P. 542).

▮ Appellants finally urge that the findings "that the deposit of purchaser was not forfeited and that respondent is entitled to judgment in the sum of $8,250.00" are unsupported by the evidence and are contrary to law.

During the trial the parties stipulated that the purchaser defaulted and that appellants were suing for damages for breach of contract.

"The ordinary forfeiture provision is for the exclusive benefit of the vendor, who has an option either to declare a forfeiture or to enforce the contract." (25 Cal.Jur. 608, § 113, and authorities there cited.)

For the reasons stated, the judgment is affirmed.

White, P. J., and Doran, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 7, 1951. Schauer, J., voted for a hearing.