[Civ. No. 19194. Second Dist., Div. Three. Feb. 17, 1954.]

LAWRENCE BLOCK COMPANY, INC. (a Corporation), Respondent, v. J. E. PALSTON, Appellant.

Tobias G. Klinger for Appellant.

Marvin Osburn for Respondent.

VALLÉE, J.—Appeal by defendant from an adverse judgment in an action to recover a broker's commission.

In October, 1950, defendant was the owner of a parcel of realty improved with an apartment building in Los Angeles. The property was encumbered with a first deed of trust in the then approximate amount of $49,000. According to the terms of the note secured by the deed of trust, it could not be paid in full until April 1, 1952, without the consent of the beneficiary, Mrs. Mae E. Blenkiron. Defendant decided to sell the property and listed it exclusively with Harold E. Phelps and Associates, a firm of real estate brokers. The property was listed for sale at $150,000.

In January, 1951, during the time the exclusive listing with Phelps was in effect, a salesman from the Phelps office, Walter H. Nichols, brought a salesman from plaintiff's office, H. B. Sawtell, to see defendant. Sawtell was introduced as an associate of Nichols. Plaintiff had no independent listing of the property, but was working in cooperation with the Phelps office in an effort to find a buyer. Sawtell submitted a written offer of $137,500, made by Aaron Neidorf to defendant. She refused the offer and asked that a larger offer be obtained.

On January 27, 1951, Sawtell, in the company of Nichols, brought another written offer from Neidorf to defendant in the amount of $142,500. It was typed on a printed form prepared by plaintiff. When presented to defendant, the offer had been signed by Neidorf. The instrument was also signed by plaintiff, as agent of defendant, acknowledging receipt of $1,000 paid by Neidorf on account of the purchase price. The instrument provided, in part, that the unpaid purchase price ($141,500) would be paid as follows:

" $ . . .

| 33,541.64 | Cash on demand of escrow |
| 60,000.00 | First Deed of Trust payable $474.60 per month including 5% int. to be secured by Seller and assumed by Buyer." |

The offer was discussed by Sawtell, Nichols and defendant for approximately an hour before defendant signed the document. During that time, the language in the offer "to be secured by Seller" was stricken out in ink, and the phrase "and subject to Seller securing a" was inserted in ink immediately after the statement of cash to be paid on demand of escrow. Defendant initialed the changes made. Thus, as modified, the provision relative to the payment of the purchase price reads as follows:

| " [$] 1,000.00 | Check as shown above as deposit |
| 7,958.36 | First Trust Deed covering premises at 2207 Harcourt St. L.A. to be assigned to seller named herein. |
| 33,541.64 | Cash on demand of escrow. |
| | AND SUBJECT TO SELLER SECURING A |
| 60,000.00 | First Deed of Trust payable $474.60 per month including 5% int. to be secured by Seller and assumed by Buyer. |
| 40,000.00 | Second Deed of Trust in favor of the Seller payable $316.40 or more per month including 5% interest. |

$142,500.00"

The agreement also provided that the purchase price included "furniture and furnishings now on the premises as evidenced by an inventory to be furnished by the Seller and approved by the Buyer." Following the paragraph setting forth the terms of the purchase price and under the heading "SUBJECT TO:" there were the typewritten state-

ments: "O.P.A. Rent statements to be approved by Buyer"; "Subject to buyer's inspection and approval of all apartments." Defendant affixed her signature to the offer, as seller, beneath a number of printed lines comprising a part of the form reading:

"We accept and confirm agent's authority to accept said payment on account of the purchase price and agree to sell said property to above buyer on the terms and conditions above stated. For services heretofore rendered we also agree to pay LAWRENCE BLOCK Co., Inc. *(5%) Five* per cent of above specified sales price and a reasonable sum as attorney fees if suit be commenced to collect the same. If above sale is not completed upon fault of buyer and not seller and payments have been made on account of the purchase price then agent's commission shall be one-half of payments made on account of the purchase price including deposits made with agent, to seller and in escrow, but not exceeding said *(5%) Five* per cent. Agent is authorized to retain deposits made with agent in payment on account of said commission.

"If sale is not completed upon fault of seller, with or without deposits made, the agent's commission shall be as first above provided."

The parties did not proceed to escrow.

Defendant testified that "right away," the same day, she telephoned Mrs. Blenkiron's secretary and requested that Mrs. Blenkiron increase the deed of trust to $60,000. The secretary talked it over with Mrs. Blenkiron. They told defendant that at that time they couldn't raise the "mortgage" to that amount. Defendant so informed the brokers. In a conversation at defendant's home the next day, January 28, 1951, Sawtell and Nichols informed her, and agreed, that the deal was off if she "couldn't raise the $60,000."—that there was "no deal," "absolutely no deal." This evidence is uncontradicted.

Several days later, defendant received through H. E. Phelps and Associates an offer for the property from another party. In the meantime, Sawtell talked to Neidorf, and on February 1, 1951, he presented another written offer by Neidorf to defendant which she did not accept because she had already accepted the later offer made through Phelps.

Plaintiff, thereafter, filed this action against Mrs. Palston based upon the agreement of January 27, 1951, claiming a commission of $7,125. (5 per cent of $142,500.) Plaintiff claims that its commission was earned when it obtained the

agreement dated January 27th. Defendant alleged in her answer that the sale to Aaron Neidorf was made contingent upon her obtaining a $60,000 first deed of trust, payable at $474.60 per month, including 5 per cent interest, which was to be assumed by the buyer.

The court did not permit defendant to testify to any part of the discussion preceding her signing of the offer and the making of the changes therein, ruling that any discussion prior to the making of this contract was merged in the written agreement.

The court found: defendant employed plaintiff as a real estate broker to obtain, and plaintiff did obtain, an agreement dated January 27, 1951; the agreement was executed by Neidorf as buyer and defendant as seller; the promise in the agreement made by defendant to pay plaintiff the commission was not subject to the condition that the sale of the property be completed; the promise to pay plaintiff the commission was not subject to the provision "subject to Seller securing a $60,000 first trust deed"; the promise was made unconditionally; and defendant, in the agreement of January 27, 1951, confirmed that she had employed and authorized plaintiff as a real estate broker to perform the service of obtaining said agreement signed by the buyer; and plaintiff did obtain the agreement. Judgment was for plaintiff. Defendant appeals.

Defendant contends the findings are not supported by the evidence. She says: 1. The agreement of January 27, 1951, including the payment of any commission, was contingent upon and subject to the condition of obtaining a $60,000 trust deed—which through no fault of hers did not occur—and further, that the payment of any commission by her was dependent upon completion of the sale. 2. Even under plaintiff's theory that it is entitled to commission for services rendered in procuring the agreement of January 27, it is necessary that the agreement be valid and binding; and evidence of a valid, binding agreement is lacking. 3. The court misapplied the parol evidence rule and erroneously excluded material testimony.

To entitle a broker to a commission for a sale of real property it must be established that in pursuance of his contract and within the time specified therein, he found a purchaser ready, able, and willing to buy on the terms and conditions specified in the contract of employment, or, if

the exact terms are not specified in his contract, upon terms satisfactory and acceptable to his employer. (9 Cal.Jur.2d 240, § 79.)

Plaintiff agrees that it is entitled to recover only if it found a buyer ready, able, and willing to buy on terms acceptable to defendant. It argues, however, that Neidorf was ready, able, and willing to buy on the terms of his written offer and that defendant accepted such terms by signing the agreement of January 27, 1951; consequently, she cannot question the readiness, willingness, and ability of the procured purchaser to perform according to the terms of his offer. In support of its proposition, plaintiff relies on such cases as *Deeble* v. *Stearns*, 82 Cal.App.2d 296 [186 P.2d 173]; *Cole* v. *Low*, 81 Cal.App. 633 [254 P. 676]; *Carrington* v. *Smithers*, 26 Cal.App. 460 [147 P. 225]; *Jauman* v. *McCusick*, 166 Cal. 517 [137 P. 254]. Those cases hold that a broker employed to sell real property has earned his commission when he has produced a purchaser who has been accepted by his principal as his purchaser by entering into a contract with him, and that the failure of either party to perform the contract is not material to the right of the broker to receive compensation from his principal. The rule laid down in those cases is based entirely on the principle that the broker, having performed what he was employed to do, is entitled to be paid without regard of the ultimate fate of the contract between his principal and the purchaser produced by him. Those cases have no application to a situation where the claim of the broker is based on a provision of a contract of sale between his principal and the person produced by him to which he himself is not a party. In such a case, his rights are those only conveyed by such contract. (*Brion* v. *Cahill*, 34 Cal.App. 258, 260-261 [165 P. 704].)

 Where the only agreement to pay a broker a commission is contained in the contract between his principal and the customer, the broker's right to compensation is dependent upon performance of that contract. If the customer refuses to perform, or if the contract is canceled or rescinded, the broker cannot recover. In such cases the broker, not having the protection of the ordinary broker's contract for compensation for service to be performed, must stand or fall on the contract actually entered into; and if he has seen fit to allow payment of his compensation to be dependent upon the performance of a contract made between parties

other than himself, he cannot complain if, through the non-performance of that contract, his own contingent rights be lost. (*Jennings* v. *Jordan,* 31 Cal.App. 335 [160 P. 576]; *Devereux* v. *Sirkus,* 105 Cal.App.2d 340 [233 P.2d 644]; *Dowds* v. *Armstrong,* 17 Cal.App.2d 485 [62 P.2d 411]; *K. Lundeen Corp.* v. *Barlow,* 120 Cal.App. 391 [7 P.2d 1102]; *Houghton* v. *Kuehnrich,* 46 Cal.App. 469 [189 P. 457]; see *Stewart* v. *Bowie,* 43 Cal.App. 751, 754 [185 P. 868]; *Brion* v. *Cahill,* 34 Cal.App. 258 [165 P. 704]. *Cf. Rose* v. *Gardner,* 130 Cal.App. 302 [19 P.2d 1008].) As was said in *Jennings* v. *Jordan, supra* (p. 337): "The plaintiff's right to recover, then, must depend entirely upon the terms of the contract entered into between Fletcher and Jordan, to which Eppinger [broker] was not a party. Up to that point, so far as the evidence discloses, there was no obligation upon them to pay him anything. The object of the contract actually entered into was to provide for an exchange of the properties of the parties thereto, each agreeing to convey title free of encumbrances, and the provision therein for the payment of a commission to Eppinger must be construed in its relation to the whole contract. Quite apart from the evidence of Jordan, one of the parties to it, that as to him it was not his intention that any commission should be paid unless the exchange of lands was actually effected, such would be the natural and logical construction of the instrument. Unless and until the exchange was consummated the parties would receive no benefit from Eppinger's efforts; and, as we have seen, there was no obligation existing to pay Eppinger anything except that arising from the written agreement under consideration. The provision relating to such payment is not separable from the remainder of the contract; and certainly as to Jordan, when the other party to it found himself unable to comply with its terms and consented to its cancellation (Jordan already having a right to rescind it), the whole contract fell, the provision relating to Eppinger's compensation with the rest. If the broker should suffer any hardship from such construction it is one inherent in the form of the contract entered into, and which was the only means he chose for his protection."

Before a broker is entitled to compensation, the negotiations which he is authorized to make must be concluded or conducted to the state where, as to all the material or essential terms of the sale, there is a meeting of the minds or an agreement between the principal and the customer

produced by him; but if the principal and the customer are unable to come to terms, the broker cannot recover. (*Love* v. *Gulyas*, 87 Cal.App.2d 608, 618 [197 P.2d 405]; *Silva* v. *Goldman*, 117 Cal.App.423, 426 [4 P.2d 191]; 9 Cal.Jur.2d 256, § 87; 12 C.J.S. 184, § 84.)

Plaintiff was entitled to a commission only if defendant and Neidorf came to a meeting of the minds as to the terms of sale and if the contract did not fail of consummation through the fault of defendant. (*Stanton* v. *Carnahan*, 15 Cal.App. 527 [115 P. 339].)

Although the terms of a contract need not be stated in the minutest details, it is requisite to enforceability that it must evidence a meeting of the minds upon the essential features of the agreement, and that the scope of the duty and limits of acceptable performance be at least sufficiently defined to provide a rational basis for the assessment of damages. (*Ellis* v. *Klaff*, 96 Cal.App.2d 471, 478 [216 P.2d 15]; 12 Am.Jur. 554, § 64.) Where the parties assume to make a contract in which one's promise is the consideration for the promise by the other, the promises must be mutual. To be obligatory on either party, the contract must be mutual and reciprocal in its obligations. One who promises to do a thing only if it pleases him, is not bound to perform. (*Central Oil Co.* v. *Southern Refining Co.*, 154 Cal. 165 [97 P. 177]; 12 Cal.Jur.2d 317, § 114.) Where a contract imposes no definite obligation on one party to perform, it lacks mutuality of obligation. It is elementary that where performance is optional with one of the parties no enforceable obligation exists. (*Patty* v. *Berryman*, 95 Cal.App.2d 159, 167 [212 P.2d 937]; *Shortell* v. *Evans-Ferguson Corp.*, 98 Cal.App. 650, 660-661 [277 P. 219]; *Chas. Brown & Sons* v. *White Lunch Co.*, 92 Cal.App. 457, 461 [268 P. 490]; *Seymour* v. *Shaeffer*, 82 Cal.App.2d 823, 825 [187 P.2d 95]; Williston on Contracts (rev. ed.), Vol. 1, pp. 123-128, 349.) This type of promise is illusory and does not result in a binding agreement even if unconditionally accepted.

The terms of the agreement gave Neidorf two opportunities to decline to purchase the property. The Neidorf offer of January 27, 1951, expressly provided that it was "subject to" two special conditions: (1) "O.P.A. Rent statements to be approved by Buyer," and (2) "Subject to buyer's inspection and approval of all apartments." These conditions had the effect of reserving to the offeror the un-

restricted discretion to decide whether to be bound or not, even in the event of an unconditional acceptance by the offeree. No standard or basis for these "approvals" is established. No hint is given as to what criteria, if any, are to determine whether the O.P.A. rent statements and all the apartments will be approved by the buyer. What are the rent statements to contain or show for the offeror's approval to be forthcoming? What are the apartments to have and consist of in order to be "approved"? Are they to satisfy him as to size, furnishings, décor? Who is to judge whether he is satisfied with the statements and apartments? Only the buyer himself. It is entirely a subjective matter. (*Ellis* v. *Klaff,* 96 Cal.App.2d 471, 478 [216 P.2d 15].) No one could compel Neidorf to be satisfied for he reserved these approvals to himself without limitation or restriction. ■ The standard "as to the satisfaction of a reasonable person" does not apply where the performance involves a matter dependent on judgment. (*Melton* v. *Story,* 113 Cal.App. 609, 613 [298 P. 1032] ; 12 Cal.Jur.2d 440, § 219.)

■ By simply refusing to approve the O.P.A. statements or the apartments, Neidorf could withdraw from the agreement. Actually, the Neidorf "offer" was not an offer to enter into an agreement, but an offer to enter into an agreement if he later wished to do so. This illusory promise is the only offer that was submitted by plaintiff to defendant. ■ When by the terms of an agreement the owner of property binds himself to sell on specified terms, and leaves it discretionary with the other party to the contract whether he will or will not buy, it constitutes simply an optional contract. (*Johnson* v. *Clark,* 174 Cal. 582, 586 [163 P. 1004].) This was all that the contract amounted to in this case.

Plaintiff cites *Lipton* v. *Johansen,* 105 Cal.App.2d 363 [233 P.2d 648], and *Keelan* v. *Belmont Co.,* 73 Cal.App.2d 6 [165 P.2d 930], as holding that a buyer's promise to purchase subject to approving O.P.A. rent statements and inspecting the apartments is not illusory. In those cases the buyer approved the rent statements, inventories, and apartments. Neidorf did not.

■ To entitle a broker to a commission, the acceptance of the buyer's offer to purchase must be unconditional. (*Edwards* v. *Billow,* 31 Cal.2d 350, 358-359 [188 P.2d 748] ; *Andrews* v. *Waldo,* 205 Cal. 764 [272 P. 1052] ; see, also, *Love* v. *Gulyas,* 87 Cal.App.2d 608, 613 [197 P.2d 405].)

It is fundamental that an offer imposes no obligation until it is accepted according to its terms. A qualified acceptance of an offer constitues a rejection of the original offer and puts an end to it. (*Niles* v. *Hancock*, 140 Cal. 157, 161 [73 P. 840].) An acceptance must be absolute and unqualified. A qualified acceptance is a new proposal. (Civ. Code, § 1585; *Hunkins-Willis Co.* v. *Los Angeles etc. Co.*, 155 Cal. 41 [99 P. 369]; *Patterson* v. *Clifford F. Reid, Inc.*, 132 Cal.App. 454, 456 [23 P.2d 35].)

An acceptance, to result in the formation of a binding contract, must meet exactly and precisely the terms proposed in the offer; and if something different is made a condition of the alleged acceptance there is no meeting of the minds and no contract arises, unless the original offeror accepts the counteroffer. (*Howard* v. *Chow*, 27 Cal.App.2d 755, 757 [81 P.2d 994]; *Robbins* v. *Pacific Eastern Corp.*, 8 Cal.2d 241 [65 P.2d 42]; *Ajax Holding Co.* v. *Heinsbergen*, 64 Cal.App.2d 665 [149 P.2d 189].)

When the Neidorf offer was submitted to defendant on January 27, 1951, it had been signed by the offeror. After that, defendant wrote in ink the words "and subject to Seller securing a" following the statement as to the amount of cash to be paid on demand of escrow. The meaning usually attributed to such words as "subject to" is that a promise that is so limited is a conditional promise, one that is different from that for which the offeror bargained. (Corbin on Contracts, Vol. 1, p. 186, § 61; *Humes* v. *Walker*, 116 Cal.App. 599, 601 [3 P.2d 33].)

A contract is to be interpreted "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641; Code Civ. Proc., § 1858.) "A contract shall be so construed as to give force and effect, not only to every clause, but to every word in it, so that no clause or word may become redundant." (*Cole* v. *Low*, 81 Cal.App. 633, 637 [254 P. 676].) Where a contract is partly written and partly printed, the written parts control the printed parts. (Civ. Code, § 1651; Code Civ. Proc., § 1862. See *Body-Steffner Co.* v. *Flotill Products*, 63 Cal.App.2d 555, 561 [147 P.2d 84].) The intention disclosed by the written part prevails over the printed part. (*Burns* v. *Peters*, 5 Cal.2d 619, 623 [55 P.2d 1182].) In the case at bar, the only hand-written provision is the conditional "subject to" language placed there during the meeting on January 27, 1951. It was incorporated just prior

to defendant's affixing her signature. The modifying language qualifies and dominates the entire agreement. To the extent that it is inconsistent with, or repugnant to, any printed clauses elsewhere in the contract, the latter are to be disregarded. (Civ. Code, §§ 1651, 1653; Code Civ. Proc., § 1862; 12 Cal.Jur.2d 362, § 148.) The inserted words, read in conjunction with the next line relative to the $60,000 first deed of trust, make defendant's acceptance subject to or conditional on her securing a trust deed loan for $60,000. (*Edwards* v. *Billow,* 31 Cal.2d 350 [188 P.2d 748]; *M. V. B. MacAdam Co., Inc.* v. *Bryant,* 86 Cal.App. 74, 77 [260 P. 298]; *Hamlin* v. *Barnhart,* 26 Cal.App. 632, 633 [147 P. 1188].)

A construction given a contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will when reasonable be adopted and enforced by the court. (*Woodbine* v. *Van Horn,* 29 Cal.2d 95, 104 [173 P.2d 17].) The practical construction of a contract made by the parties thereto is the best evidence of what they intended. (*Tennant* v. *Wilde,* 98 Cal.App. 437, 453-454 [277 P. 137]; see, Civ Code, § 3535; *Barham* v. *Barham,* 33 Cal.2d 416, 423 [202 P.2d 289]; *California C. P. Growers* v. *Williams,* 11 Cal.2d 221, 229 [78 P.2d 1154]; *Lemm* v. *Stillwater Land & Cattle Co.,* 217 Cal. 474, 481 [19 P.2d 785]; *Douglas* v. *Bergere,* 94 Cal.App.2d 267, 270 [210 P.2d 727].)

The conduct of the parties here, at the time of the making of the agreement and immediately thereafter, is consistent only with the construction that defendant did not unconditionally accept Neidorf's offer to purchase. The understanding of all the parties as to the conditional nature of the acceptance is demonstrated by: 1. The effort by defendant to obtain a $60,000 first deed of trust after signing the agreement rather than before. 2. The agreement that there was "no deal" when the $60,000 first deed of trust could not be secured. 3. The failure to open an escrow. 4. The subsequent efforts of plaintiff to obtain a new offer from Neidorf. 5. The obtaining of a new offer by plaintiff, and its submission several days later to defendant. All of these facts, established by uncontroverted evidence, manifest the understanding of the parties that the acceptance was subject to the $60,000 deed of trust condition. Obviously, the insertion of the "subject to" language was because the first deed of trust which then encumbered the property was substantially less than $60,000

and its increase to that amount was entirely within the control of a third person not a party to the agreement.

The change made in the original offer by defendant was a material one. From a positive obligation imposed upon her to secure a $60,000 deed of trust, the agreement was changed to make her promise to sell conditional upon her securing such a deed of trust. There is no testimony in the record to show that Neidorf ever approved or ratified the qualifying change which had been made in his offer. The result of his failure to accept the counteroffer was that there was no binding contract between him and defendant. (*Edwards* v. *Billow,* 31 Cal.2d 350 [188 P.2d 748]; *Howard* v. *Chow,* 27 Cal.App.2d 755 [81 P. 2d 994]; 12 Cal.Jur.2d 217, § 25.)

The only evidence offered by the parties relative to defendant's efforts to obtain Mrs. Blenkiron's consent to increase the deed of trust to $60,000 was that given by defendant. Her testimony was not contradicted by plaintiff. Plaintiff stipulated that Mrs. Blenkiron had said she would not raise the amount.

In view of our conclusion it is unnecessary to consider defendant's point with respect to the ruling rejecting evidence proffered by her.

Plaintiff's commission was dependent on a binding contract between Neidorf and defendant. It chose to protect its commission by a contract between other parties. Since they failed to enter into a binding contract, it is not entitled to recover.

Reversed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied March 15, 1954, and respondent's petition for a hearing by the Supreme Court was denied April 14, 1954.