[Civ. No. 26244.   Second Dist., Div. Two.   Dec. 13, 1962.]

NATHANIEL P. GREEN, Plaintiff and Appellant, v. MORRIS LINN, Defendant and Respondent.

Milton Wichner for Plaintiff and Appellant.

Shulman & Shulman, Alfred R. Meyers and Adley M. Shulman for Defendant and Respondent.

ASHBURN, J.—Essentially this is an action for recovery of a real estate broker's commission in an agreed amount.

Demurrer to second amended complaint was sustained without leave to amend and judgment was entered accordingly. Plaintiff appeals therefrom.

By written agreement of September 4, 1959, between defendant Morris Linn and George Elkins Company, a licensed real estate broker and assignor of plaintiff, the former gave to the broker "the exclusive right to sell, as well as the exclusive agency to sell" certain real property, for a period of 90 days from date and for a purchase price of $288,500, "or any other terms accepted by me," broker's commission to be five per cent "of such consideration or price as I may accept." The agreement also says: "This sale subject to Court approval."

Though the complaint alleges that the property belonged to Driftwood Manor, a limited partnership in which Morris Linn, Milton N. Linn and other named defendants were partners, the agency agreement was signed by Morris Linn alone and makes no reference to his acting for others in the matter. The complaint says that he was acting on behalf of himself as a general partner in Driftwood Manor and as agent for other defendants in the action. Though the judgment runs in favor of Driftwood Manor, Arthur C. Bialac, William R. Bidner, Sidney Cramer and Sally Cramer, as well as Morris Linn, the notice of appeal refers only to a judgment in favor of defendant Morris Linn and he alone appears as respondent in this court.

The complaint alleges that Driftwood Manor was a limited partnership in which Morris Linn, Milton N. Linn and others were partners; that this partnership was dissolved through action numbered SMC 6962 and entitled *Milton N. Linn* v. *Morris Linn et al.*, filed in Los Angeles Superior Court on April 14, 1959; that the affairs of the partnership have been wound up and the assets thereof distributed among the various partners; at the time of filing the instant action, April 24, 1961, the principal asset of the partnership was an apartment house known as Driftwood Manor, but the disposition of said property was subject to control of the court under a restraining order issued in said case No. SMC 6962. The Elkins Company procured Benjamin J. Sims and wife as purchasers ready, willing and able to buy for $276,000, and on September 18, 1959, Sims and Morris Linn entered into an escrow with Elite Escrow Company providing for a sale for a price of $276,000 payable $71,000 cash, assumption of existing trust deed of $168,000 and second lien trust deed of $37,000. On

September 23, 1959 the parties amended the instructions to provide that the $37,000 second trust deed be assigned to the Elkins Company and it agreed to pay to defendants $20,000 in cash; defendants would thus receive $91,000 in cash; Elkins agreed that the assignment of the trust deed to it would be payment of its broker's commission due from defendants.

On September 22, 1959, defendants made a motion in the dissolution proceeding for approval of the sale to Sims returnable on September 25; at that time Milton M. Linn made an oral application for approval of a sale to him for $259,000, which would yield $91,500 cash to defendants—$500 more than the sale to Sims would yield if brokers' commissions were not paid. Plaintiff, who was present, directed the court's attention to his 90-day exclusive right to sell, which still had 69 days to run and stood upon the agreement which had been assigned to him. Defendants, including Morris Linn, through their attorneys, Brock, Fleishman & Rykoff, "orally stipulated and agreed that the sale to Milton N. Linn should be approved by the Court and the petition for approval of the sale to [Sims] should be denied." Apparently the stipulating parties were the only persons in interest and "The Court accordingly denied the petition for approval of the sale to the Sims and approved the sale to Milton N. Linn on condition that said defendant execute an agreement in writing indemnifying and holding all of the defendants in the within action other than Milton N. Linn, free and harmless from any liability for brokerage commissions or damages arising out of the sale of the said property; the Court in its order further provided that it did not pass on the question whether George Elkins Company, or any other person, was or was not entitled to a commission in connection with the sale of the said property; that defendant Milton N. Linn executed and delivered his indemnification in favor of the other defendants herein." It is further alleged that performance by plaintiff and his assignor under the broker's agreement was wholly prevented and frustrated by the acts of defendants in entering into the sale of the subject property to defendant Milton N. Linn; also that as a direct and proximate result of defendants' breach of the agreement giving plaintiff's assignor the exclusive right to sell the property, plaintiff has been damaged in the sum of $17,000. A second count is for services performed for defendants by plaintiff's assignor "as real estate brokers for defendants" for which they became indebted in the sum of

$13,800. A third count is for money had and received in the sum of $17,000.

Appellant argues that the agreement was one conferring exclusive right to sell and that defendants' selling through some other person created in the broker a right to recover the stipulated commission.

It appears that the broker had produced in this instance a buyer who was acceptable to the seller and whose offer was accepted in writing. That constitutes full performance by the broker and matures his right to the agreed commission. "While the primary duty of a broker who has been employed by the owner (as here) is to procure a purchaser who is ready, able and willing to buy upon the terms prescribed by the owner, the latter by accepting the proffered purchaser and entering into a contract with him for the sale of the same property upon the original or other terms is estopped to deny the purchaser's ability or readiness to perform and estopped to deny the broker's right to his commission; this is true even if the deal fails of ultimate consummation through the fault of either party." *(Wesley N. Taylor Co.* v. *Russell,* 194 Cal.App.2d 816, 826 [15 Cal.Rptr. 357].) See also *Deeble* v. *Stearns,* 82 Cal.App.2d 296, 299 [186 P.2d 173]; *Austin* v. *Richards,* 146 Cal.App.2d 436, 439 [304 P.2d 132]; *Collins* v. *Vickter Manor, Inc.,* 47 Cal.2d 875, 880 [306 P.2d 783]; *Mann* v. *Mueller,* 140 Cal.App.2d 481, 486 [295 P.2d 421]; *Mitchell* v. *Johnston,* 140 Cal.App.2d Supp. 982, 984 [298 P.2d 170].

In the present case it appears, however, that the broker's agreement was conditional—"This sale is subject to Court approval." The quoted phrase spells a condition. ( *Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300, 310 [266 P.2d 856].) It follows that the broker cannot state a cause of action unless he shows performance of the condition. *Phillips* v. *Barton,* 207 Cal.App.2d 488, 494 [24 Cal.Rptr. 527]: "The broker cannot recover a commission under this agreement for the condition was never performed, and it is the law that 'acceptance of a conditional deal procured and presented by the broker does not ripen into a right to a commission unless that condition, precedent or subsequent is performed. See *Colton* v. *O'Brien,* 217 Cal. 551, 553 [20 P.2d 43]; *McAdoo* v. *Moore,* 70 Cal. App. 408, 410-411 [233 P. 391]; *Leipsic* v. *Taggart,* 101 Cal.App. 726, 728 [282 P. 400]; *Lawrence Block Co.* v. *Palston, supra,* 123 Cal.App.2d 300, 309 [266 P.2d 856]; *McFarland* v. *Heady,* 123 Cal.App.2d

Supp. 973, 976 [267 P.2d 460]; *Cochran* v. *Ellsworth*, 126 Cal.App.2d 429, 439 [272 P.2d 904].' *(Wesley N. Taylor Co.* v. *Russell,* 194 Cal.App.2d 816, 828 [15 Cal.Rptr. 357].)''

But the rule is not applicable where the owner prevents the fulfilling of the condition. Restatement Second of Agency, § 445, comment e, page 349: ''This promise, although now binding, does not call for performance unless there has been a fulfillment of the further condition, either that such customer shall make a contract enforceable against him, or that the conveyance shall be consummated, except that if the principal is responsible for the nonperformance of such condition, it is dispensed with and the promise to pay the commission becomes unconditional.'' Section 446, page 351: ''An agent whose compensation is conditional upon his performance of specified services or his accomplishment of a specified result within a specified time is not entitled to the agreed compensation unless he renders the services or achieves the result within such time, unless the principal, in bad faith, has prevented him from doing so.'' Section 450, pages 363-364: ''A principal has a duty not to repudiate or terminate the employment in violation of the contract of employment. . . . The repudiation by the principal of the contract of employment after a contract with the agent has been entered into and before the time for performance constitutes a breach of contract. Such repudiation may be: . . . (c) by any act making or intended to make his substantial performance impossible.'' 9 Cal.Jur.2d § 97, page 272: ''Even though a broker's contract provides that his commission is payable only when the transaction is actually completed, if the transaction fails of consummation solely through the fault of the vendor, the broker is nevertheless entitled to his commission. Under such circumstances, the condition upon which payment was made contingent is excused.'' See also *Diamond* v. *Huenergardt,* 175 Cal.App.2d 214, 222 [346 P.2d 37]; *Lathrop* v. *Gauger,* 127 Cal.App.2d 754, 770 [274 P.2d 730]; *Wesley N. Taylor Co.* v. *Russell, supra,* 194 Cal.App.2d 816, 829.

Morris Linn was the person liable on the contract with the broker, although he had undisclosed principals *(Otis Elevator Co.* v. *Berry,* 28 Cal.App.2d 430, 432 [82 P.2d 704]; *Wedge* v. *Security-First Nat. Bank,* 219 Cal. 113, 119 [25 P.2d 411]; 2 Cal.Jur.2d § 170, p. 869). Before the specified term had expired he breached that contract by conduct which prevented the performance of the condition, ''This sale subject to Court approval'' He stipulated in open court that

a sale to Milton N. Linn should be approved by the court and that his own petition for approval of sale to Sims be denied. By so stipulating he rendered himself unable to fulfill the obligation of the Sims contract and thereby breached the same. *Coulter* v. *Howard,* 203 Cal. 17, 23 [262 P. 751] : "But prior to the time provided for completion of the transaction, respondent not only sold the property to another with intent to repudiate the transaction with Mr. Driver, but she actually served notice of attempted cancellation of the whole transaction. The law will not lend an ear to such contention on her part; therefore, the payments provided will be held due as of the date of repudiation. The law requires of the vendor good faith and the doing of no intentional act to discourage, embarrass, or prevent the completion of the purchase. [Citations.]" *Lathrop* v. *Gauger,* 127 Cal.App.2d 754, 770 [274 P.2d 730] : "Defendant having frustrated by her own remissness the realization of the contractual objectives, she cannot take advantage of such conduct to efface the broker's right to his commission. *(Richardson* v. *Walter Land Co.,* 118 Cal. App.2d 459, 464 [258 P.2d 42] ; *Showers* v. *Rober,* 92 Cal.App. 171, 175-6 [267 P. 884].)'' See also *Johnson* v. *Goldberg,* 130 Cal.App.2d 571, 578 [279 P.2d 131] ; *Collins* v. *Vickter Manor, Inc., supra,* 47 Cal.2d 875, 881. To say the least, this was a waiver of the condition. (See *Wesley N. Taylor Co.* v. *Russell, supra,* 194 Cal.App.2d 816, 828-829.)

It is argued that the resulting order was the act of the court, that respondent could not control the judge's decision and therefore respondent is not chargeable with breach of the contract or procuring such a breach. We find this untenable. ▪ It well may be true that the judge had discretion to accept or reject the stipulation when proffered (83 C.J.S. § 7, p. 10), but once it has been accepted a stipulation binds the court as well as the parties. (83 C.J.S., § 17, p. 37; 1 Witkin, California Procedure, § 4, p. 63 ; 46 Cal.Jur.2d § 15, p. 34; *Estate of Howe,* 88 Cal.App.2d 454, 458 [199 P.2d 59] ; *Capital National Bank* v. *Smith,* 62 Cal.App.2d 328, 344 [144 P.2d 665].) ▪ So the question narrows to one of whether it was a breach of contract for respondent to persuade the court to accept his stipulation. Obviously good faith was an implied term of the contract and that forbade the sellers acting in such manner as to frustrate the consummation of the deal.

Counsel for appellant has approached the case as one for damages for prevention of performance of the broker's con-

tract. *Collins* v. *Vickter Manor, Inc., supra,* 47 Cal.2d 875, 883: "As hereinabove stated, counts five and six undertake to plead causes of action against the individual defendants Engle and Vickter for the tort described (in *Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 39 [2] [172 P.2d 867]) as 'Intentional and unjustifiable interference with contractual relations.' It is established that one who, without legal justification, intentionally induces a third person not to perform a contract with another, is liable to the other for the ensuing damage. *(Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33, 35 [1] [112 P.2d 631].)

"Plaintiffs have alleged the existence of a valid contract and an intentional unjustified interference with it by the individual defendants which caused defendant corporation to breach such contract to plaintiffs' damage. Whether or not Engle and Vickter were privileged to cause the corporation to discontinue its relations with plaintiffs, in the belief that such a course of action was in the best interests of the corporation, is a matter of defense, to be decided by a resolution of the factual issues presumptively involved. Their right, if any, to such privilege, does not affirmatively appear on the face of the complaint."

From this standpoint the real problem is whether respondent did frustrate performance of the obligation which carried a right of compensation in favor of plaintiff's assignor. ■ Defendants, including Morris Linn, had made a written motion for approval of the sale to Sims, so it cannot be said (under this complaint) that there was any good reason why such an order should not be made. However, when Milton N. Linn made an oral motion to approve a sale to him, one which would net defendants $500 more than the Sims sale "if brokers' commissions were not paid," all the defendants (including Morris Linn) stipulated and agreed that approval of the Sims sale should be denied—which was tantamount to withdrawal of their motion for approval—and that the sale to Milton N. Linn be approved; they cannot dodge liability for procuring breach of plaintiff's brokerage agreement by placing the onus on the judge, saying they could not control him. They were the ones who induced the judge to act in that manner and it is at least a question of fact whether their representations were not the effective cause of the judge's making the particular order. The question is one of proximate cause *(Hill* v. *Progress Co.,* 79 Cal.App.2d 771, 780 [180 P.2d 956]; *Augustine* v. *Trucco,* 124 Cal.App.2d 229, 246

[268 P.2d 780]; Prosser on Torts, Second Edition, p. 728; Rest., Torts, § 766, comment f, p. 57; 86 C.J.S. § 44, p. 963). As pointed out in *Collins, supra,* at page 883, the question of causing cause is one of fact and here, as there, the complaint itself does not exonerate defendant from liability. Plaintiff is entitled to a trial of that issue of fact.

Appellant further argues that the two common counts were sufficient to survive the general demurrer in that they did not disclose a relationship to the first count which set forth the facts. In view of the ruling just made this point requires no discussion.

■■■ Respondent makes the point that plaintiff has waived his rights under the contract of September 4, 1959, by entering into the escrow amendment of September 23, 1959, to the effect that the $37,000 second trust deed be assigned Elkins Company and it should pay to defendants $20,000, thus leaving the broker to look to the trust deed for realization upon his commission in a sum of $17,000. This doubtless effected a partial modification of the original agreement, substituting trust deed for cash commission, but it was not a waiver of commission, and as defendants made it impossible for Elkins to carry out the deal on that basis, it seems that this September 23 arrangement merely emphasizes the error in sustaining demurrer without leave.

The judgment is reversed with instructions to the lower court to overrule the demurrer and permit defendant to answer the second amended complaint within a specified reasonable time.

Fox, P. J., and Herndon, J., concurred.