[Civ. No. 26297.   Second Dist., Div. One.   Dec. 26, 1962.]

LAWRENCE BLOCK COMPANY, INC., Plaintiff and Respondent, v. A. E. ENGLAND, Defendant and Appellant.

Danielson & St. Clair and Walter G. Danielson for Defendant and Appellant.

Osburn & Osburn and Marvin Osburn, Jr., for Plaintiff and Respondent.

FOURT, J.—Defendant appeals from a judgment rendered in favor of plaintiff by the trial court sitting without a jury in an action to recover a real estate broker's commission.

Viewing the evidence in the light most favorable to supporting the trial court's determination a résumé of the facts is as follows: Rose Joelson, an authorized real estate saleslady employed by plaintiff, an authorized real estate broker, obtained on Friday, June 19, 1959, the written offer of Harold and Marilyn S. Sonners to pay $92,500 for defendant's residence in Beverly Hills, together with all carpets and draperies. This offer was typed in plaintiff's office on a printed form provided by plaintiff and designated: ''Deposit Receipt, Purchase and Sale Agreement and Agreement: Broker's Commission.''

On the same day at approximately 6 p. m. Miss Joelson telephoned the $92,500 offer to defendant, who replied that he would not sell for less than $97,500. She inquired as to whether he would give a counteroffer and defendant replied in the affirmative and requested Miss Joelson to come to his home.

Miss Joelson proceeded to defendant's home, where they discussed: reduction of escrow period from 90 to 30 days, finally arriving at a 60-day escrow period; a price of $97,500 and the appliances which would pass with the property.[1]

[1] See footnote 1 at end of opinion.

She drew lines through the words "Ninety two thousand" and wrote "Ninety-Seven Thousand" above the original typed words. She drew lines through the figure "92,500.00" and wrote "97,500" above the original typed figure. She drew lines through the figures $5,000, $5,000, $82,500 and $92,500 and on the margin of each wrote the figures 5,000, 5,000, 87,500 and 97,500. Defendant initialled each of the six changes made by her. Defendant also drew lines through the figures "90" concerning the escrow period, wrote the figures "60" in the same space and initialled this change. Defendant then signed in one place on the bottom portion of the form.

Miss Joelson then left and later the same evening telephoned the buyers. She informed them that the price was raised to $97,500; escrow period shortened to 60 days; and that the seller (i.e. defendant) had authorized and instructed her to include the appliances. The buyers replied that they wanted time to think about it.

On the next day, Saturday, Miss Joelson told the buyers that defendant would sell for $97,500 including the appliances; and that he (i.e., defendant) had given her authority to say the appliances were included, to which the buyers replied that they would like to try a compromise of $95,000. That evening Miss Joelson telephoned defendant and he stated, "No, I will not sell the house for $95,000. It has to be $97,500."[2]

On Sunday, the following day, Miss Joelson showed the house to the buyers and while they sat in Miss Joelson's automobile she added the six appliances, whereupon the buyers initialled the changes in price, escrow and the appliances. That evening Miss Joelson telephoned defendant and stated that she had sold the house for $97,500, which included the appliances.[3] After reading the list of appliances and changes, to which defendant replied, "that's fine," defendant said to Miss Joelson, "you march yourself down to the Escrow at the Bank of America, title search has been started, everything is set for you."

On Monday, June 22, 1959, pursuant to instructions by defendant, Miss Joelson left the deposit receipt with the escrow officer. On the following day, Tuesday, June 23, 1959, the escrow officer informed Miss Joelson that he (i.e., escrow officer) was instructed by defendant not to write up escrow instructions, that defendant had told him that he (i.e.,

---

[2], [3]See footnotes 2 and 3 at end of opinion.

defendant) wanted the termite clause omitted from the escrow instructions, although the termite clause was in the deposit receipt.

On the same day Miss Joelson went to defendant's office and later saw defendant, who said that he had nothing to say to her.

Later the bank prepared escrow instructions which called for sale of the residence with all carpets and draperies, and the six appliances. The buyers signed one set of escrow papers and deposited $5,000.

Still referring to Tuesday, June 23, Mr. Danielson telephoned Miss Joelson, said he was attorney for defendant, and at defendant's request he had read the deposit receipt, which he thought provided that $10,000 would be paid outside of escrow and wanted to know from Miss Joelson when and where the $10,000 would be paid to his client. Mr. Danielson also mentioned: that only wall to wall carpets would be sold; that there would be no termite inspection; and that possession would not be given until his client's (i.e., defendant's) apartment was ready. Miss Joelson asked if she could satisfy his client by depositing additional monies in escrow and Mr. Danielson said he would find out.

On Thursday, June 25, another $5,000 was deposited by the buyers. Plaintiff deposited in escrow the $5,000 received as a down payment, and buyers signed one set of escrow instructions.

Mr. Danielson testified that he had notified defendant that $15,000 was now deposited in escrow. He further testified that Miss Joelson had telephoned that there was no problem concerning carpets because the buyers agreed to take only the wall to wall carpets. He further admitted that payment of $10,000 outside of escrow was not again mentioned in this or in later conversations.

Defendant and buyers had two or three conversations after the escrow was opened in which defendant mentioned that the buyers were getting the appliances and granted buyers' request to have their remodeling contractor enter the premises in furtherance of buyers' remodeling plans.

Certain escrow amendments were prepared at defendant's request and typed by the escrow officer pursuant to instruction by defendant's attorney.[4]

On February 2, 1960, plaintiff filed its complaint for

---

'See footnote 4 at end of opinion.

broker's commission. Defendant's answer was filed March 21, 1960. The pretrial conference was held on June 2, 1961, and the conference order was filed June 12, 1961. It incorporates by reference a joint pretrial statement.[5]

On November 29, 1961, the findings of fact and conclusions of law were filed.[6] Judgment was entered on December 4, 1961.[7]

Before discussing the various contentions raised by defendant on this appeal, a further summary of the essential facts will be helpful in bringing the problems presented into sharp focus.[8]

*First,* on June 19, 1959, defendant seller executed a written and subscribed counteroffer and verbally told and authorized the saleslady, Miss Joelson, to insert certain appliances in said written counteroffer;

*Second,* on June 21, 1959, pursuant to the aforesaid verbal authorization, Miss Joelson did in fact insert the appliances in defendant's written counteroffer;

*Third,* subsequently, on June 21, 1959, the buyers accepted the counteroffer containing the list of appliances; and,

*Fourth,* on June 21, 1959, Miss Joelson informed defendant that the buyers had accepted the counteroffer and defendant verbally reaffirmed his counteroffer and his authorization to Miss Joelson to insert the appliances in the counteroffer.

Defendant contends that ''The Writing Upon Which Plaintiff Relies as a Binding Agreement Between Buyers and Owner [i.e. defendant] Is Invalid Under the Statute of Frauds.''

The thrust of defendant's contention is that the real estate saleslady, Miss Joelson, could not alter the counteroffer signed by defendant unless authorized to do so in writing; that since Miss Joelson was not authorized by written instrument to insert the six appliances in defendant's counteroffer, plaintiff did not procure a buyer ready, able and willing to purchase on the terms subscribed by defendant (i.e. when defendant subscribed his written counteroffer it did not contain the six appliances).

It is established that for a broker to recover a commission he must procure within the time specified in his employment contract a buyer ready, able and willing to purchase on the terms authorized. (*Andrews* v. *Waldo,* 205 Cal. 764, 771 [272 P. 1052] ; *McRae* v. *Ross,* 170 Cal. 74, 78 [148

---

[5], [6], [7], [8]See footnotes 5, 6, 7 and 8 at end of opinion.

P. 215] ; *Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300, 307 [266 P.2d 856] ; *Keller* v. *Glendon,* 124 Cal.App.2d 634, 638 [268 P.2d 1089].)

When the buyers accepted the written counteroffer, said counteroffer bore defendant's signature and contained the list of appliances.

The first question to be resolved is whether Miss Joelson had authority to insert the six appliances in defendant's counteroffer after defendant had executed the counteroffer.

There is substantial evidence in the record to establish that defendant in fact gave verbal authority to Miss Joelson to insert the six appliances in his counteroffer. The trial court found (finding of fact V) that when defendant executed the counteroffer he "told and authorized said Rose Joelson to insert in said deposit receipt the appliances" and that she, pusuant to defendant's instructions "inserted and listed in said instrument, the appliances enumerated as aforesaid . . . on June 21, 1959 in her car when parked in front of the home of Defendant, who was not in the car at the time." There is substantial evidence to establish the fact and the trial court found (finding of fact VI) that after the buyers accepted the counter offer "including said appliances inserted and listed by Rose Joelson. . . . [she] informed Defendant that buyers had accepted his changes and would purchase the real and personal properties therein described including the appliances as provided in the agreement. When Rose Joelson informed Defendant that the buyers had accepted his counter offer, Defendant reaffirmed his said counter offer including the appliances and his authorization to Rose Joelson to insert the appliances." There is substantial evidence to establish the fact and the trial court found (finding of fact X) that "Defendant accepted and approved all terms including aforesaid appliances inserted in Exhibit 2 and did ratify, confirm, approve and reaffirm that Defendant did authorize Rose Joelson to insert and list said appliances in said Exhibit 2. Defendant did ratify, confirm and reaffirm said changes and the list of appliances inserted as aforesaid as the act of Defendant after Defendant had signed said instrument Exhibit 2 as seller." There is substantial evidence to establish the fact and the trial court found (finding of fact XV) that defendant "accepted the buyers and approved and reaffirmed his counter offer."

Defendant devotes many pages of argument to the proposition that verbal authority to insert the list of appliances into

the signed counteroffer is violative of the statute of frauds.

Whether or not defendant's verbal authorization given to insert the appliances in defendant's signed counter offer was legally effective at the time said authorization was given, it is clear that once the list of appliances was in fact inserted in defendant's signed counter offer, defendant could then reaffirm it by the adoption of his prior signature. It is stated in 37 Corpus Juris Secundum, Frauds, Statute of, section 202, page 696:

"*An adoption of a prior signature* made by the parties, with the intent to authenticate the instrument, is sufficient to comply with the requirements of the statute of frauds." (Italics shown.)

Defendant's next contention is that defendant's obligation to pay plaintiff its commission was dependent upon the consummation of the sale.

Defendant's reliance upon the case of *Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300 [266 P.2d 856] is misplaced. What was stated in *Collins* v. *Vickter Manor, Inc.,* 47 Cal.2d 875 [306 P.2d 783] is dispositive of defendant's contention.

The court stated at pages 880-881 as follows in pertinent part:

"[3] Defendants rely on *Lawrence Block Co.* v. *Palston* (1954) 123 Cal.App.2d 300, 305-306 [266 P.2d 856]. It is there correctly determined that 'To entitle a broker to a commission for a sale of real property it must be established that in pursuance of his contract and within the time specified therein, he found a purchaser ready, able, and willing to buy on the terms and conditions specified in the contract of employment, or, if the exact terms are not specified in his contract, upon terms satisfactory and acceptable to his employer.'

However, defendants assert, the only right of plaintiffs to recover a commission grows out of the written deposit receipt between the buyer and seller, and therefore the following statement in the Block Company case is controlling: 'Where the only agreement to pay a broker a commission is contained in the contract between his principal and the customer, the broker's right to compensation is dependent upon performance of that contract.' But this statement does not indiscriminately control every three-party writing signed by the broker, his principal, and the customer. [4] Such a three-party writing may unequivocally specify, or where uncertain may be construed or shown by extrinsic evidence to mean, that

the broker has fully performed the duties of his employment and earned his commission by having obtained a buyer ready, able, and willing to proceed with a purchase in accord with those terms of the writing which define the seller's offer—the offer for which the seller employed the broker to produce a qualified acceptor.''

Plaintiff did obtain a buyer ready, able and willing to proceed with a purchase in accord with those terms of defendant's reaffirmed counteroffer. (See findings of fact—footnote 6.)

The court went on to state at page 881:

''Even if we assume that the agreement between plaintiff brokers and defendant corporation can properly be construed to mean that plaintiffs were not to receive their commission until consummation of a final agreement between the corporation and the buyer . . . [the] plaintiffs and the buyer did everything which the agreement required of them and that consummation was prevented solely by the arbitrary refusal of defendant . . . to proceed with the transaction. [6] In these circumstances, the defendants will not be allowed to take advantage of their own remissness to defeat plaintiff's recovery. [Citations.]'' (See *Lathrop* v. *Gauger*, 127 Cal. App.2d 754, 770 [274 P.2d 730]; 9 Cal.Jur.2d, Brokers, § 95, p. 266.)

It is equally clear that ''Competition of said sale pursuant to said instrument Exhibit 2 was prevented solely by the arbitrary refusal by Defendant as seller to proceed with the transaction.'' (Finding of fact XII-footnote 6.) And that ''Defendant arbitrarily, and without cause, refused to sign the escrow papers or proceed with the sale and perform his agreement Exhibit A.'' (Finding of fact XVI—footnote 6.)

Exhibit 2 contains a provision for reasonable attorneys' fees ''if suit be commenced to collect said commission.'' Plaintiff requests that this court allow reasonable attorneys' fees for services rendered on this appeal.

A contract for a reasonable attorneys' fee in enforcing its provisions embraces an allowance for legal services rendered upon appeal as well as during trial. (*Wilson* v. *Wilson*, 54 Cal.2d 264, 272 [5 Cal.Rptr. 317, 352 P.2d 725]; *Dankert* v. *Lamb Finance Co.*, 146 Cal.App.2d 499, 503-504 [304 P.2d 199].) The trial court fixed the sum of $750 as reasonable attorneys' fees for services rendered in that court. It appears that $500 is a reasonable sum to be allowed for attorneys' fees on this appeal.

326

The judgment is affirmed, and defendant is ordered to pay to plaintiff additional attorneys' fees on this appeal in the sum of $500.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 24, 1963, and appellant's petition for a hearing by the Supreme Court was denied February 20, 1963.

[1]The reporter's transcript discloses Miss Joelson's testimony relative to the Friday meeting at defendant's home as follows:

"Q. On this same evening of June 19, 1959, will you state in substance what this conversation consisted of between you and Mr. England?

" . . . . . . . . . . . .

"THE WITNESS: . . . he said he was happy about it, he said that he was happy about my putting forth such fast action because he wanted to sell his house as fast as he could, and I said, 'Well, it isn't sold yet. We have to get the $97,500,' and he said, 'Oh, well, I think you will get it.' And with that I gave him the deposit receipt. I had several copies and I said, 'Well, these people were quite adamant,' *and I said, 'Shall I include the appliances to help get this price up for you?'*

"*He said, 'Oh, sure, you can include those. I don't need those anyway. They are building in the appliances for me where I am going to live.'*

"*I said, 'All right, I will include them.'*

"*He said, 'Don't bother with including them on the deposit receipt right now. The main thing is the price. Put the price in and get that changed.'*

" . . . . . . . . . . . .

"Q. Can you tell us what appliances were discussed on this occasion?

"A. Well, there was the washer and a dryer and a stove and a refrigerator and I think there were—I don't remember now—one or two air conditioners. I don't remember." (Emphasis added.)

[2]The reporter's transcript discloses that Miss Joelson testified as follows in pertinent part:

"I said, 'All right, I will see what I can do but also remember the fact that we were speaking about the appliances. I have already told the buyers that they could have the appliances with the price of $97,500,'. . . ."

[3]The reporter's transcript discloses that Miss Joelson testified in pertinent part as follows:

"Q. BY MR. OSBURN: Will you state in substance what was said by you and Mr. England.

"A. Yes. I called him and I congratulated him. I said that his house was sold and he said, 'Well, that's just fine. You did a good job. I am proud of you. This is just what I wanted. I don't want a lot of people going through my house and I am glad that the house is sold.'

"And I said, 'All right, I want you to listen to all the information that I can give you on this contract,' *and I proceeded to read everything that was on the contract, everything on it, including the appliances, and I named each one of them over the phone and he said, 'Well, that's just fine.' "*

[4]Exhibit 6, amendment to escrow instructions, dated June 30, 1959,

provides: "The carpets referred to in the original escrow instructions means only those which are tacked wall to wall."

Exhibit 7, amendment to escrow instructions, dated July 8, 1959, provides: "The closing date set forth in the original escrow instructions which reads 'August 24, 1959' is corrected to read 'September 23, 1959.'"

Exhibit 8, amendment to escrow instructions, dated August 13, 1959, provides: "Seller will deliver possession of subject premises to Buyer within one week after he has received notice in writing from Wilshire Terrace Apartments that so far as its work is concerned Seller's apartment is finished and ready for occupancy."

Exhibit 9, amendment to escrow instructions, dated August 17, 1959, provides: "Due to circumstances beyond the contral of Seller, possession of the subject premises cannot be delivered on or before August 24, 1959, and therefore the closing date of this escrow is hereby extended to the date one week after the receipt by escrow holder of a written notice from Wilshire Terrace Apartments that so far as its work is concerned Seller's apartment is finished and ready for occupancy, or as soon thereafter as the escrow holder can close same, and Seller agrees to deliver possession at the close of escrow to Buyer with. . . ."

[5]The joint pretrial statement provides in pertinent part as follows:

"A. Nature of the Case

"Plaintiff real estate broker brings this action against Defendant Seller to recover a five per cent (5%) commission and attorney fees specified in their contract and made payable upon the facts alleged: that Plaintiff produced buyers ready, willing and able to purchase the real and personal property described in the complaint according to the terms of the contract. Plaintiff also contends that Defendant is estopped to assert the statute of frauds because Defendant represented that the appliances were included in the sale and Defendant authorized Plaintiff and later confirmed and ratified Defendant's authority given to Plaintiff to insert in the contract, a provision that certain appliances were also included in the sale.

"Defendant denies that he entered into any agreement in writing to sell the buyers said real property and said appliances and affirmatively alleges that: the buyers offered to buy said real property with all carpets and drapes for $92,500 which Defendant rejected; Defendant made written counter offer to sell said real property with carpets and drapes for $97,500, payable $10,000 cash out of escrow, and the balance of $87,500 prior to close of escrow and buyers were to open an escrow within four days and Plaintiff was authorized to find a buyer only on said conditions; the buyers did not accept Defendant's counter offer and no escrow was opened to cover said sale; and that the buyers offered $97,500 for said real property with all carpets and drapes, plus additional personal property; that Defendant did not accept and that the value of said personal property was in excess of $500 and Defendant has not agreed thereto by any note or memorandum as required by Section 1624(a) and 1724 of the Civil Code and Section 1973(a) of the Code of Civil Procedure.

"B. Status of the Case

". . . . . . . . . . .

"C. Facts Admitted in Pleadings or Agreed Upon:

". . . . . . . . . . .

"6. On or about June 19, 1959, Plaintiff obtained an offer in writing on a form prepared by Plaintiff from Harold and Marilyn Sonners to purchase from Defendant Seller the real property described in the answer including carpets and drapes for a purchase price of $92,500 and said offer also provided that buyers would open an escrow for completion of the sale within four days after being notified that the offer was accepted.

328

"7. On or about June 19, 1959, Defendant caused the handwritten changes increasing the purchase price to $97,500 and decreasing the escrow period to sixty (60) days to be inserted.

"D. Issues of Fact and Law To Be Tried

"1. Did Plaintiff produce buyers in accordance with Defendant's agreement with Plaintiff according to the terms and conditions specified by Defendant Seller?

"2. What were the terms and conditions specified by Defendant?

"3. Was inclusion of the appliances specified in the terms and conditions by Defendant Seller?

"4. Is the alteration of the Deposit Receipt whereby several items of household appliances were added a material alteration?

"5. Is the altered Depsoit [sic] Receipt admissible into evidence?

"6. Is parol evidence relative to the inclusion of the appliances admissible?

"7. Do the State [sic] of Frauds (C.C. 1624(a) and 1724 and CCP 1973(a) and [Civ. Code] Section 2309) apply to the inclusion of the appliances in the sale?

"8. Was the reasonable value of the appliances in excess of $500?

"9. Did the Defendant Seller on his behalf authorize Plaintiff to also list the appliances?

"10. Was Defendant's authorization or consent to inclusion of the appliances conditioned, and if so, upon what conditions and when?

"11. Was the condition for including the appliances in the purchase price that Defendant could remain in his home until his apartment was ready?

"12. Did Defendant ratify the insertion of aforesaid appliances, listed by Plaintiff?

"13. Did Defendant's offer require that $10,000 cash be paid Defendant outside of escrow?

"14. Did Defendant's offer specify that the buyers were to open an escrow for the consummation of said sale within four days from date they were notified of Defendant's counter offer?

"15. Were the buyers, produced by Plaintiff, ready, willing and able to accept according to the terms and conditions specified by Defendant Seller?

"16. Did said buyers accept according to the terms and conditions specified by Defendant Seller?

"17. Did said buyers open an escrow?

"18. Did Defendant Seller acquiesce in and accept the buyers produced by Plaintiff?

"19. Has Plaintiff performed all obligations required on its part to be performed?

"20. Did Defendant Seller promise in writing to pay Plaintiff a commission of five per cent (5%) of the purchase price mentioned for Plaintiff's services heretofore rendered in endeavoring to sell said property and for obtaining said offer?

"21. Did Defendant Seller also promise in writing to pay Plaintiff a reasonable sum as attorney fees if suit be commenced to collect said commission?

"22. Is Defendant Seller estopped to assert Civil Code Sections 1624 (a) and 1724 and Code of Civil Procedure Sections 1973(a) and [Civ. Code] 2309?

"23. Is Defendant precluded from raising the statute of frauds as a defense?

"E. Defendants [sic] Contentions

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"F. Plaintiff's Contentions

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .

<sup>a</sup>The findings of fact and conclusions of law provide in pertinent part as follows:

"Findings of Fact

"IV

"On or about June 19, 1959, Plaintiff in result of the services rendered by Rose Joelson, its saleslady, did produce and obtain the signatures of the buyers who signed the deposit receipt and purchase and sale agreement introduced in evidence as Exhibit 2 as Harold Sonners and Marilyn S. Sonners and as buyers. When buyers signed as aforesaid, the instrument introduced in evidence as Exhibit 2, provided for a purchase price of Ninety Two Thousand Five Hundred Dollars ($92,500.) and for a 90 day escrow and did not list the appliances:—O'Keefe & Merritt stove, Frigidaire refrigerator, Bendix Duo Washer-Dryer, Kelvinator freezer and 2 air conditioners.

"V

"After the buyers signed said instrument as aforesaid and on or about June 19, 1959, Defendant did sign said instrument as seller and did change the instrument to increase and specify the purchase price of Ninety Seven Thousand Five Hundred Dollars ($97,500.) and to reduce the escrow period to 60 days. Defendant initialled the changes including the deposit listed as, $5,000, $5,000 and $87,500. *At the time Defendant made these changes Defendant told and authorized said Rose Joelson to insert in said deposit receipt the appliances listed as aforesaid. Pursuant to said instruction by Defendant, Rose Joelson inserted and listed in said instrument, the appliances enumerated as aforesaid and as now listed in Exhibit 2. Rose Joelson made said insertions in the deposit receipt on June 21, 1959 in her car when parked in front of the home of Defendant, who was not in the car at the time. Said changes made by Defendant including the appliances listed and inserted pursuant to Defendant's authorization, constitute a counteroffer to the buyers by Defendant.*

"VI

"*After Defendant had signed said instrument and made and initialled his changes thereon as aforesaid, the buyers—Harold Sonners initialled the changes as approved, including said appliances inserted and listed by Rose Joelson. The buyers authorized and pursuant to said authorization, Rose Joelson informed Defendant that buyers had accepted his changes and would purchase the real and personal properties therein described including the appliances as provided in the agreement. When Rose Joelson informed Defendant that the buyers had accepted his counter offer, Defendant reaffirmed his said counter offer including the appliances and his authorization to Rose Joelson to insert the appliances. Said instrument, Exhibit 2, signed by the buyers and Defendant constitutes an agreement of purchase and sale by buyers and Defendant of the properties therein described upon the terms specified.*

"VII

"*Aforesaid appliances, at the time they were authorized to be inserted in Exhibit 2, did not equal or exceed the value of Five Hundred Dollars ($500.00).*

"VIII

"Defendant authorized Plaintiff in writing to sell the properties described in Exhibit 2 on the terms therein specified and did also in writing promise to pay Plaintiff a commission of five per cent (5%) of the purchase price and also a reasonable sum as attorneys fees if suit be commenced to collect said commission.

"IX

"Plaintiff employed Osburn & Osburn, counsel of record herein, to commence and maintain this action to collect said commission. Said attor-

neys are duly licensed to practice law in the State of California. A reasonable sum for said services is $750.00. Plaintiff agreed to pay said sum to said attorneys.

''Defendant has not paid Plaintiff said commission, any part thereof or any sum as attorneys fees.

''X

*Plaintiff, pursuant to its obligations expressed in Exhibit 2 and its employment by Defendant and within the time specified in Exhibit 2, did produce the buyers: Harold Sonners and Marilyn S. Sonners as buyers entered into the agreement Exhibit 2; Defendant did sign as seller, said agreement introduced in evidence as Exhibit 2; said Exhibit 2 constitutes a deposit receipt, an agreement wherein Defendant employs Plaintiff and also an agreement of purchase and sale wherein seller accepts the buyers and agrees to sell to the buyers and buyers agree to buy from seller, the real and personal properties therein described upon the terms also therein specified; the buyers were ready, able and willing to purchase the properties described in the agreement Exhibit 2 in accordance with the terms therein specified; and Defendant accepted and approved all terms including aforesaid appliances inserted in Exhibit 2 and did ratify, confirm, approve and reaffirm that Defendant did authorize Rose Joelson to insert and list said appliances in said Exhibit 2. Defendant did ratify, confirm and reaffirm said changes and the list of appliances inserted as aforesaid as the act of Defendant after Defendant had signed said instrument Exhibit 2 as seller.*

''XI

''Plaintiff performed all obligations required to be performed by Plaintiff as broker as required of Plaintiff in said instrument Exhibit 2.

''XII

''The buyers performed all obligations required in said instrument Exhibit 2 to be performed by buyers. *Completion of said sale pursuant to said instrument Exhibit 2 was prevented solely by the arbitrary refusal by Defendant as seller to proceed with the transaction.*

''XIII

''In said agreement Exhibit 2, Defendant promised, among other provisions, to pay Plaintiff the commission specified for Plaintiff's services rendered in endeavoring to sell said property and for obtaining the offer to purchase. Defendant did not accept the offer made by the buyers and made a counter offer. Plaintiff obtained the acceptance by buyers of this counter offer made by Defendant pursuant to authorization and request by Defendant. These services rendered by Plaintiff were rendered pursuant to employment of Plaintiff by Defendant under the provisions in Exhibit 2.

''XIV

''Said agreement of purchase and sale, Exhibit 2, did not obligate Plaintiff [*sic*] to pay Defendant $10,000 in cash out of escrow.

''XV

''Both Plaintiff and Defendant intended and acted pursuant to the intention that procurement of buyers' acceptance to Defendant's counter offer would constitute performance by Plaintiff of its obligations in the instrument Exhibit 2 and entitle Plaintiff to payment of the commission specified. That pursuant to said intention, said agreement and said instructions by Defendant, Plaintiff did obtain the acceptance by buyers to Defendant's counter offer. Defendant acepted the buyers and approved and reaffirmed his counter offer.

''XVI

''Buyers did cause an escrow to be opened as specified in the deposit receipt, Exhibit 2. Defendant arbitrarily, and without cause, refused to

sign the escrow papers or proceed with the sale and perform his agreement Exhibit A.

## "XVII

"That Plaintiff is entitled to receive from Defendant, the commission specified in Exhibit 2 and to interest on its commission from August 24, 1959 to date of rendition of judgment at the rate of seven per cent (7%) per annum.

## "XVIII

"The counter offer made by Defendant did not require that $10,000 be paid out of escrow.

## "XIX

"The only terms and conditions specified by Defendant are set forth in Exhibit 2.

## "XX

"The authorization given to insert the appliances, by Defendant at the time Exhibit 2 bore his signature was not subject to a condition that Defendant be allowed to remain on the property agreed to be sold and described in Exhibit 2 until an apartment for Defendant had been made ready.

## "Conclusions of Law

## "I

"That the instrument with all changes and insertions made therein and with all initials by buyers and seller Exhibit 2, is admissible in evidence.

## "II

"Neither Sections 1624(a), 1724 or 2309 of the Civil Code nor 1973(a) of the Code of Civil Procedure bar introduction of the deposit receipt (Exhibit 2) or any part of said instrument into evidence or Plaintiff from recovering thereon.

## "III

"Defendant may not rely upon Sections 1624(a), 1724 or 2309 of the Civil Code nor 1973 (a) of the Code of Civil Procedure as a defense to said action.

## "IV

"That Plaintiff is entitled to recover from Defendant the sum of Four Thousand Eight Hundred Seventy Five Dollars ($4,875.00) with interest thereon from August 24, 1959 to date of rendition of judgment at the rate of seven (7%) per cent per annum.

## "V

"That Plaintiff is entitled to recover from Defendant the sum of Seven Hundred Fifty Dollars ($750.00) as the sum Plaintiff became obligated to pay as attorneys fees.

## "VI

"That Plaintiff is entitled to recover from Defendant, its costs of suit incurred herein."

(Emphasis added.)

---

[7]The judgment provides in pertinent part as follows:

"It Is Ordered, Adjudged and Decreed that Plaintiff do have and recover from Defendant, the sum of Five Thousand Six Hundred Twenty Five Dollars ($5,625.00); interest at the rate of seven (7%) per cent per annum on Four Thousand Eight Hundred Seventy Five Dollars ($4,875.00) from August 24, 1959 to date of rendition of judgment herein in the sum of $767.81, making in all the sum of $6,392.81; for Plaintiff's costs of suit herein amounting to the sum of $120.00; and with interest on said judgment until paid as provided by law."

---

[8]All conflicts in the evidence are resolved in favor of supporting the judgment.